## VANN v. ALMOURS SECURITIES, Inc.

### No. 8732.

Circuit Court of Appeals, Fifth Circuit.
April 25, 1938.

K. I. McKay, of Tampa, Fla., for appellant.

Henry P. Adair and John M. McNatt, both of Jacksonville, Fla., for appellee.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was brought under section 64, c. 2, title 12, U.S.C.A.[1] to enforce a 100 per cent. assessment made by the Comptroller of the Currency on the capital stock of the bank, payable May 14, 1931. The claim was that though the defendant had on August 28, 1930, more than sixty days before the bank failed, made a sale of its stock, this sale was ineffective to extinguish its liability, because made with knowledge of the impending failure of the bank. In amplification of the claim it was alleged that the sale was made in pursuance of a fraudulent scheme, initiated, set on foot, and carried out by defendant for the purpose of getting rid of the stock and relieving itself of liability. The defense was a general denial of the charge of fraud, and of knowledge of the impending failure of the bank, and a vigorous affirmation; that the sale had been made in good faith, and for value; that the bank was not then insolvent, nor was its failure impending; that, in short, the transaction was a bona fide, good-faith sale, and unimpeachable.

The court, on motion of plaintiff, referred the cause to a master, with directions "to take such testimony and evidence as may be produced, and report the same with his findings of fact and conclusions of law, to the court." The master appointed having become too ill to proceed with the trial, a substitute master with the same powers was appointed on the joint request of plaintiff and defendant. Testimony having been fully heard before him, he filed findings of fact and conclusions of law in effect that the sale was made with knowledge of the impending failure of the bank, and recommended a decree for plaintiff.

Defendant, besides excepting to the master's findings and recommendations, moved the recommittal of the cause to hear additional specific evidence. The motion granted, and the testimony heard, the master, in a supplemental report, reaffirmed his former findings that the bank was insolvent, and its failure impending when the transfer of the stock was made, and that this was known to defendant. Exceptions to the report as supplemented coming on to be heard, the District Judge, upon a full consideration of the record in the light of the report, reached and filed findings of fact and conclusions of law of an exactly contrary purport. Fully and carefully reviewing the evidence, and as carefully and fully setting down its effect, the result was to find as a fact, and conclude as matter of law, that the master's findings

---

[1] Sec. 64: "Individual liability of shareholders; transfer of shares. The stockholders of every national banking association shall be held individually responsible for all contracts, debts, and engagements of such association, each to the amount of his stock therein, at the par value thereof in addition to the amount invested in such stock. The stockholders in any national banking association who shall have transferred their shares or registered the transfer thereof within sixty days next before the date of the failure of such association to meet its obligations, or with knowledge of such impending failure, shall be liable to the same extent as if they had made no such transfer, to the extent that the subsequent transferee fails to meet such liability; but this provision shall not be construed to affect in any way any recourse which such shareholders might otherwise have against those in whose names such shares are registered at the time of such failure."

and conclusions were without support in the evidence, and that plaintiff had not borne the burden of showing that on April 3, 1930, when defendant transferred its stock to the holding company, or on August 28, 1930, when the holding company transferred its stock to others, the First National Bank was insolvent, and its failure impending, to the knowledge of defendant. Exceptions to the master's findings of insolvency and of the knowledge by defendant of impending failure were therefore sustained, and the bill was dismissed for want of equity. This appeal followed.

Here, though appellant argues, but without much confidence, that the findings of the master were binding on the court, his main reliance is upon its insistence that the master and the court, having reached different conclusions, this court must determine for itself how the record stands, and that an examination of it will show that it supports the master's, and not the court's, findings.

 It is quite plain, of course, that the findings of the master in this case were not binding on the court. This is settled not only by Equity Rule 61½, 28 U.S.C. A. following section 723, and decisions construing it, but by the decisions of this court before the enactment of that rule. Parker v. Interstate Trust & Banking Co., 5 Cir., 56 F.2d 792; c/f Roosevelt v. Missouri State Life Ins. Co., 8 Cir., 70 F.2d 939. It is, of course, equally true that the findings of the master are entitled to great weight as presumptively correct, and that in considering this case the District Judge was, and we are, bound to accord that weight to them.

 A careful examination of the record in the light of this rule convinces us that the District Judge was right, the master wrong. Indeed, we think it quite plain that, apart from plaintiff's highly dramatic and rather lurid theory of the case, a theory which even the master did not accept, every reasonable conclusion from the evidence upholds the sale, none defeats it. This theory of plaintiff's, that "Almours" deliberately plotted to obtain control of the bank in order to then set on foot a policy of oppression against borrowers, so that it might unload its stock upon them, would, if at all supported by the evidence, have given to what was done a color and character tending to support plaintiff's claim that the sale was made with knowledge of impending failure. But if this theory is incorrect, and nothing in the evidence, in our opinion, tends at all to bear it out, plaintiff's case is left wholly without foundation. Instead of, as is usually the case in suits of this kind, a record showing a dumping of the stock upon willing or unwilling tools for a price so small as to plainly show that the seller knew that the bank was in bad condition, and was deliberately unloading, this record shows a sale of stock to persons wholly independent of the seller, and at a most considerable premium, to wit, $50 a share above book value. Instead of the usual case of dwindling deposits, and increasing liabilities just before the sale, the record is one of considerably increasing deposits, and decreasing liabilities. Instead of the usual situation of a loose, terrified, and slipshod management of the bank, the record shows a firm and definite policy, initiated before the sale upon Ball's advice to clear ship, to weather the storm which Ball saw was coming, and which did come in such terrific force throughout the country as, within a year of the sale, to greatly depress some values. Instead of the usual almost immediate failure after the sale of the stock, this record shows a continuous operation of the bank in a normal way, and without trouble, or anticipation of trouble, until one of its officers absconded, and rumors started the slow run which finally broke the bank.

In addition to all this, the record shows two bank examinations, one a few months before, the other just after, the sale of the stock, neither of which showed or drew from the examiner any question as to the insolvency or impending failure of the bank. On the contrary, while each examination showed some slow loans, each resulted in a finding that the bank's capital was unimpaired, and that it had a surplus considerably in excess of its admitted losses. The only difficulty with the bank's situation was that it had too many slow real estate loans. With local conditions looking up, as the people best qualified to know saw them, due to the coming of the paper mill, and the general bettering of conditions in Florida as the ruinous land boom receded, it is we think, entirely reasonable to believe that the bank was sound, if not as liquid as desirable; unreasonable to believe it stood in danger of impending

failure. The finding of the master that the sale was made with knowledge of the impending failure of the bank, was based more, we think, upon what afterwards transpired, than upon what was known or thought to be the facts at the time. Hindsight is always better than foresight, and it is easy enough, after a bank has failed, by taking a backward look, to see the danger signals flying; but persons who buy and sell bank stocks, and those who handle and manage banks, are not required to be so divining. They are held to the ordinary rules of good faith and reasonably prudent judgment.

We think it clear that the District Judge was right in holding that the sales in question here were made without knowledge of the impending failure of the bank, that, indeed, the bank's failure was not in a legal sense impending when they were made.

The decree was right. It is affirmed.